TILLIE DARELIUS v. HANNAH DAVIS.

November 30, 1898.

Nos. 11,300—(35).

74 345
f76 394

District Court—G. S. 1894, § 4869—Powers of Senior Judge.

G. S. 1894, § 4869, provides that when two judges of the fourth judicial district sit together the senior judge may decide the case, though his associate fails to agree with him. *Held*, where two sit together, the senior judge may decide the case after his associate has resigned.

Same—Wright County—Change in Judicial District.

After an action in Wright county was tried, and before it was decided, the county was, by Laws 1897, c. 379, detached from said district, and, with other counties, formed into the eighteenth judicial district. *Held*, the judge had authority to make and file a decision thereafter, although he was not a judge of the eighteenth judicial district.

Foreclosure of Mortgage—Redemption by Mortgagor's Assignee under Junior Mortgage.

A mortgagor conveyed subject to the mortgage, and took back a second mortgage, which he assigned. *Held*, a redemption made by the assignee under the second mortgage from a foreclosure sale of the first mortgage, within five days after the year to redeem expired, is made by him not as owner, but as a creditor, and does not annul the foreclosure sale.

**Foreclosure for Instalment of Debt—Lien Discharged by Sale.**
> *Held*, a foreclosure sale of the whole of the mortgaged premises for an instalment of the mortgage debt exhausts the lien of the mortgage.

**Estoppel.**
> *Held*, neither the second mortgagee nor his assignee is estopped to make such redemption.

**Principal and Agent—Evidence of Authority to Foreclose.**
> *Held*, it conclusively appears from the evidence that the mortgagee authorized the foreclosure of her mortgage.

Action in the district court for Wright county to determine adverse claims to real estate. The case was tried in November, 1896. The findings and order for judgment in favor of plaintiff were filed by Smith, J., of the fourth judicial district on June 4, 1897, after the passage of Laws 1897, c. 379, transferring Wright county from the fourth to the eighteenth judicial district. Respondent then moved the district court of Wright county to strike the findings and order for judgment from the files, on the grounds, among others, that Smith, J., was not a judge of the eighteenth judicial district nor a judge of the district court for Wright county, nor had any jurisdiction therein. The motion was denied by Baxter, J. Respondent in the last-named court then moved for additional findings of fact and for a new trial. From an order granting a new trial, Searle, J., assigned to act in said matter by the governor of the state, in place of Tarbox, J., formerly of counsel therein, plaintiff appealed. Reversed.

*A. B. Darelius* and *Brooks & Hendrix*, for appellant.

It is no defense that Gutzwiller bid in the premises in his own name. If he were respondent's agent, respondent might have compelled him, immediately upon the sale, to account to her for the amount of his bid as so much money had and received by him to her use. Beardsley v. Root, 11 Johns. 464. Even as between respondent and Gutzwiller the foreclosure would not have been void. Union v. Credit, 135 Mass. 367; Preston v. Cutter, 64 N. H. 461. The foreclosure was authorized by defendant. An agent who is employed to collect a debt may resort to such usual, proper and effective modes as the law provides. See Mechem, Agency, §§ 386,

388; 1 Wait, Act. & Def. 221; Ryan v. Tudor, 31 Kan. 366; Curtis v. Cutler, 76 Fed. 16.

A junior mortgagee is not an "assign" within G. S. 1894, § 6041, so as to be entitled to redeem within a year. Cuilerier v. Brunelle, 37 Minn. 71. Neither is a purchaser at the foreclosure of a junior mortgage such an "assign." Buchanan v. Reid, 43 Minn. 172. But a second mortgagee, a judgment creditor of the mortgagee's grantee, an attaching creditor of the mortgagor, and the assignee of a junior mortgage are each a creditor having a lien, within the meaning of G. S. 1894, § 6044, allowing redemption. Nopson v. Horton, 20 Minn. 239 (268); Hospes v. Sanborn, 28 Minn. 48; Atwater v. Manchester Sav. Bank, 45 Minn. 341; Bovey-De L. Lumber Co. v. Tucker, 48 Minn. 223. The purchaser at a foreclosure sale, whether he be the mortgagee or a third party, cannot question the bona fides of the lien under which a redemption is made. It may be created for the express purpose of enabling a third party so to redeem, and be wholly without consideration. This is no concern of the purchaser. Bovey-De L. Lumber Co. v. Tucker, supra.

A foreclosure and sale of mortgaged premises for a part of the mortgage debt exhausts the lien of the mortgage, and the purchaser at the foreclosure sale, and creditors holding liens who redeem from him, take the property entirely discharged from the mortgage. Curtis v. Cutler, supra; Fowler v. Johnson, 26 Minn. 338; Martin v. Sprague, 29 Minn. 53. Upon the foreclosure of this mortgage, the indebtedness previously owed by Olson and Carlson was absolutely and finally discharged to the extent for which the premises sold, less the statutory costs and disbursements. There remained no obligation, legal or equitable, to pay the purchaser (though such purchaser might be the mortgagee) any part of the sum for which the premises were sold. Berthold v. Holman, 12 Minn. 221 (335); Tinkcom v. Lewis, 21 Minn. 132; Pioneer S. & L. Co. v. Farnham, 50 Minn. 315; American Bldg. & L. Assn. v. Waleen, 52 Minn. 23; American Bldg. & L. Assn. v. Stoneman, 53 Minn. 212; Evans v. Rhode Island Hospital T. Co., 67 Minn. 160. See also Hervey v. Krost, 116 Ind. 268; Ogle v. Koerner, 140 Ill. 170.

Upon the foreclosure of a mortgage of real estate under the

power of sale it ceases to be a security for a debt, and the rights of the mortgagor and purchaser are to be measured by the statute, and not by anything in the mortgage. Pioneer S. & L. Co. v. Farn-ham, supra; Tinkcom v. Lewis, supra. The certificate vested in plaintiff all the title which at the time of the execution of the mortgage was vested in the mortgagor. Of necessity, it conveys a title freed from the lien of the mortgage, which had been exhausted by the foreclosure. Martin v. Sprague, 29 Minn. 53; Curtis v. Cutler, supra.

*Wm. E. Culkin* and *C. A. Pidgeon*, for respondent.

Laws 1897, c. 379, removing Wright county to a new judicial district, took away the jurisdiction of Judge Smith and the suits pending could not be concluded. See Hunt v. Jennings, 5 Blackf. 195; Kruse v. Wilson, 79 Ill. 233; Carson v. Commissioners, 64 N. C. 566; Sprigs v. State, 2 Ind. 75; State v. Judge, 22 La. An. 565; Com. v. Commissioners, 6 Pick. 500. Until the decision of the trial court is filed, there is no decision. Cain v. Libby, 32 Minn. 491. The case at bar is to be distinguished from In re State Bank, 57 Minn. 361, where there was a disagreement between the two judges as to the proper decision.

Plaintiff is estopped from acquiring this title. See MacEwin v. Beard, 58 Minn. 176; Probstfield v. Czizek, 37 Minn. 420; Allison v. Armstrong, 28 Minn. 276; Miller v. Fasler, 42 Minn. 366; Brown v. Lapham, 3 Cush. 551; Burnham v. Dorr, 72 Me. 198; Connor v. Howe, 35 Minn. 518; Travers v. Dorr, 60 Minn. 173. A mortgagor is estopped to acquire a tax title, and through said tax title to acquire a fee to the land on which he has given a mortgage, and thereby oust the mortgagee. Allison v. Armstrong, supra; Avery v. Judd, 21 Wis. 264; Smith v. Lewis, 20 Wis. 369; Boyd v. Allen, 15 Lea (Tenn.) 81. By analogy of reasoning John Carlson must not acquire this land through the mortgage until he has fully paid and satisfied the same.

The defendant herein never received a dollar from Gutzwiller as the proceeds of the foreclosure. The money she received from Gutzwiller was received as loans. This is no ratification of the foreclosure. See Owings v. Hull, 9 Pet. 607; Jones v. Warner, 11 Conn.

40; U. S. v. Advance, 80 Ill. 549; Baldwin v. Burrows, 47 N. Y. 199; Pennsylvania v. Dandridge, 8 G. & J. (Md.) 248, 323; Evans v. Wells, 22 Wend. 324; Palmerton v. Huxford, 4 Denio, 166; White v. Iselin, 26 Minn. 487; Middlesex v. Lester, 7 S. D. 333.

Courts universally condemn the acts of an agent who makes himself both buyer and seller in respect to his principal, though there may be entire good faith on the part of the agent. Moore v. Moore, 48 Mich. 271; Gardner v. Ogden, 22 N. Y. 327; Michoud v. Girod, 4 How. 503. See also Hoffman v. Hancock M. L. Ins. Co., 92 U. S. 161; Burchard v. Hull, 71 Minn. 430.

CANTY, J.

On September 8, 1892, defendant was the owner of the land in controversy, and on that day conveyed it to John Carlson and John Olson for the consideration of $4,000, $1,000 of which was paid in cash. For the balance they executed to her their 10 promissory notes, for the sum of $300 each, with 6 per cent. interest, payable annually. One of these notes was made payable in two years, and one each year thereafter for the next nine years, and to secure them the grantees executed to her a mortgage on the land.

In March, 1893, Olson conveyed his undivided one-half interest in the land to Carlson, and in November, 1893, the latter conveyed the land to Westlund and Nylander, subject to said mortgage, and in consideration thereof they executed to Carlson their promissory notes for $400, and secured the same by a second mortgage on the land. All of the deeds and mortgages were duly recorded before the foreclosure hereinafter mentioned.

Nothing was ever paid to defendant upon her notes except $180, being one year's interest on all of them. On January 24, 1895, another year's interest and the first note were past due, and foreclosure proceedings in due form, under the power of sale in her mortgage, were commenced; the amount claimed due in the notice of such sale being $480. The sale on the foreclosure was made on March 16, 1895, and one Gutzwiller bid off the property for $572.92, and the sheriff's certificate of sale was then duly made and recorded. The year to redeem expired, and no redemption was

made by the owners. Three days before the year to redeem expired, John Carlson assigned the second mortgage to his brother, Aaron Carlson, and the assignment was recorded next day. Aaron, within the year, filed notice of intention to redeem under his second mortgage from the foreclosure sale, and, within five days after the year expired, redeemed by paying to Gutzwiller the amount necessary for that purpose, and received from the latter a certificate of redemption in due form.

Thereafter, in March, 1896, Aaron conveyed the land to plaintiff, who brought this action to determine the adverse claims of defendant to the land. On the trial the court found for plaintiff, and she appeals from an order granting a new trial. The respondent urges several grounds on which she claims the order appealed from should be affirmed.

1. The case was tried before the Honorable Seagrave Smith and the Honorable Henry C. Belden, two of the judges of the fourth judicial district, without a jury. Thereafter, and before the findings of fact and conclusions of law were made, Judge Belden resigned his office, and the findings and order for judgment were made and filed by Judge Smith alone.

Respondent contends that, as the case was tried by two judges, one alone could not make the decision. Judge Smith was the senior judge, and G. S. 1894, § 4869, provides that if only two of the judges of the fourth judicial district sit together, and there is a division of opinion, the opinion of the senior judge shall prevail. If the senior judge may decide the case without the concurrence of his associate, he may do so after his associate has died or resigned.

2. The case was tried in November, 1896; the decision of Judge Smith was not filed until June 4, 1897. In the meantime Wright county, in which the action was pending, was by Laws 1897, c. 379 (passed April 21, 1897), detached from the fourth judicial district, and, with other counties, formed into the eighteenth judicial district. Judge Smith resided in Hennepin county.

Respondent contends that, as Judge Smith did not become a judge of the eighteenth judicial district, but remained a judge of the fourth judicial district, he lost jurisdiction to decide the case. We cannot agree with counsel. A judge of the district court in one

district may in many instances act as judge in another district. G. S. 1894, § 4846, provides:

"No process, proceeding or writ, civil or criminal, before any of the said courts, shall abate or be discontinued by reason of any vacancy in the office, or change of any judge, or of holding said court, but shall be proceeded in as if the said vacancy or change had not occurred."

We are clearly of the opinion that Judge Smith had authority to decide the case after the formation of the new district.

3. There is nothing in respondent's point that, under the provisions of sections 6041 and 6043, the redemption made by Aaron annulled the sale. He was not the owner or the mortgagor, or the assignee of either, within the meaning of either of these sections. If he had a right to redeem, it was as a lien creditor, not as owner.

4. Respondent contends that under sections 6030, 6031, the foreclosure of her mortgage for the first instalment did not exhaust her mortgage for the subsequent instalments not due at the time of the foreclosure. That question was disposed of against respondent's contention as long ago as Fowler v. Johnson, 26 Minn. 338, 3 N. W. 986, and 6 N. W. 486. The change in the language of G. S. 1866, c. 81, § 3, made in re-enacting it as Laws 1878, c. 53, § 3, is not, as respondent contends, of any significance.

5. Respondent contends that, as it was the duty of John Carlson to pay the amount due on the first mortgage, he is estopped from redeeming from the foreclosure sale under that mortgage, and that Aaron Carlson stands in the shoes of John with respect to this estoppel. We cannot hold that Aaron stands in the shoes of John. According to the first division of the opinion in American Baptist M. U. v. Hastings, 72 Minn. 484, 75 N. W. 713, Aaron would so stand; but, on the reargument of that case, it was held to the contrary on that point. We are also of the opinion that John himself would not be so estopped.

Respondent likens this case to one where the person whose duty it is to pay the taxes on land attempts to acquire a tax title, but, in our opinion, the illustration is not in point. It was not the duty of John to protect this land from the foreclosure of this mortgage. On the contrary, the land had become the primary fund for

the payment of the mortgage indebtedness, and, if John paid it, he would be subrogated to the rights of the mortgagee, and could himself foreclose the mortgage. A part of that indebtedness has been paid by the foreclosure sale. John owes the balance of that indebtedness whether he redeems from that sale or not. On what principle should it be held that, because he owes that balance, he is estopped from redeeming as second mortgagee? We are of the opinion that he is not estopped.

6. On the trial the defendant claimed that she never authorized the foreclosure of her mortgage. She is an invalid, and had gone to the state of California for her health. She sent the notes and mortgage to Gutzwiller, who resided at Delano, Minnesota, to collect the interest, and the notes as they fell due. He employed an attorney for her, and commenced the foreclosure proceedings January 24, 1895. The sale took place March 16, 1895, and Gutzwiller bid in the land in his own name, and the sheriff's certificate was recorded March 29, 1895. She states in the deposition used on the trial that he informed her the following April that the mortgage was foreclosed. She testified:

Q. You left the notes and mortgage in Mr. Gutzwiller's care? A. No; I brought them with me, until he concluded to foreclose. * * * Q. When you left Minnesota you expected that Mr. Gutzwiller was to collect these notes for you? A. Yes. Q. And take any steps that were necessary to collect them? A. Yes * * * Q. After coming to San Diego, you sent the notes and the mortgage back to Mr. Gutzwiller? A. Yes; after he sent for them, and he could not collect money on them, I sent them on to him. * * * Q. He wrote you, did he not, that he could not collect anything? A. Yes, sir. Q. And advised you to foreclose the mortgage? A. Yes, sir. Q. And you sent the mortgage on to him? A. Yes; but I did not advise him to foreclose it. Q. Did you send it on to him for collection? A. Yes, sir. Q. Mr. Gutzwiller wrote to you, did he not, that he had foreclosed the mortgage? A. Yes, sir. Q. And did you do anything after that? A. No, sir. Q. Then you knew that the mortgage had been foreclosed? A. Yes, sir. Q. And you never made any objection after that, did you? A. I knew it was no use. * * * Q. You expected that, if this farm of yours was redeemed, that Mr. Gutzwiller would pay himself what he had advanced you, did you not? A. Yes, sir. Q. Mr. Gutzwiller wrote you very frequently, did he not? A. Yes. Q. And he kept you posted on what was being done back in Minnesota, about

this note and mortgage? A. Yes, sir. Q. And you knew that he was going to foreclose the mortgage? A. Well, he said he would. I did not think he would do it, as I objected so to it. Q. But he wrote that he was going to? A. Yes. Q. And he wrote you again after it had been done? A. Yes; he wrote to say that he was going to do it. That it was the only way to get money for me. * * * Q. And, after he had foreclosed the mortgage, he wrote you about it, did he not? A. Yes, sir. Q. And you made no objection to his having done so? A. No. * * * Q. You left the matter of these notes to Mr. Gutzwiller to do as he pleased,—as he thought best? A. Yes. Q. All of these notes? A. Yes, sir."

This evidence is wholly uncontradicted, and it seems to us is conclusive that she either authorized this foreclosure or ratified it, or both. It is true that she testifies that she did not know Gutzwiller had bid the property in in his own name. But she knew that the mortgage was foreclosed. She did not direct him to bid it in in her name or bid any particular sum. She must be held to have known that some one had bid it in, and she knew that Gutzwiller was advancing her money on the faith of this foreclosure. As soon as she discovered that there had been a foreclosure, it was her duty to act promptly, to ascertain all the facts, and repudiate the transaction, if he had exceeded his authority or committed any breach of his duty. Her failure to do so estops her from repudiating his acts after the second mortgagee has advanced and parted with his money in making the redemption.

This disposes of all the questions raised having any merit, and we regret exceedingly that, because some one has blundered in managing this foreclosure, the lady may never get the balance due her.

The order appealed from is reversed, and the case remanded, with directions to enter judgment for plaintiff.